**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| _____ | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| O.W. Bunker Holding North America Inc., *et al.*, | ) | Case No. 14-51720 (JAM) |
| Debtors | ) | Jointly Administered |
| _____ | ) | |
| O.W. BUNKER USA INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No. 15-05071 (JAM) |
| | ) | |
| HUDSON SHIPPING LINES INC., | ) | |
| Defendant. | ) | |
| _____ | ) | April 15, 2016 |

**DEFENDANT HUDSON SHIPPING LINES INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Hudson Shipping Lines Inc. ("Defendant" or "Hudson Shipping") submits this Memorandum of Law in Support of its Motion to Dismiss pursuant to Rule 12(b)(7) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7012(b). The Court should dismiss the First Amended Complaint dated March 21, 2016 filed by O.W. Bunker USA, Inc. ("Plaintiff" or "OWB USA") in the above-captioned adversary proceeding (the "Complaint") in its entirety pursuant to Rule 12(b)(7) because the Plaintiff has failed to join in this action parties who are indispensable parties under Rule 19 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rule 7019. Furthermore, if the entire Complaint is not dismissed, pursuant to Rule 12(b)(6) the Court should dismiss Count II, Count III and Count IV of the Complaint for failure to state claims upon which relief may be granted because the Plaintiff has failed to properly allege causes of action for breach of contract (in Count II), unjust enrichment (in Count III), and conversion (in Count IV).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This adversary proceeding arises out of a dispute concerning the delivery of marine fuel (known as bunkers in the maritime industry) in or about October 2014, shortly before the Plaintiff filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code.  The bunkers were delivered to seven vessels under charter to Hudson Shipping: the Mimosa, Zagora, Bridgegate, Torm Bornholm, Lowlands Maine, Star of Nippon, and Ken Cape (collectively, the "Vessels").  *See* Declaration of William Ross Pursuant to 28 U.S.C. §1746 dated February 26, 2016 ("Ross Decl." – Doc. No. 14-3) at para. 9.  According to the Complaint:

- Plaintiff entered into a contract to purchase marine fuel from O.W. Bunker Far East (S) Pte. Ltd. that was delivered to the Zagora on October 16, 2014 by Universal Energy PTE Ltd.  *See* Complaint at para. 15-16, Exhibit C.

- Plaintiff entered into a contract to purchase marine fuel from OWB Dubai-Korea and O.W. Bunker Middle East DMCC that was delivered to the Torm Bornholm by SK Trading International on October 21, 2014.  *See* Complaint at para. 20-21, Exhibit F, Exhibit G.

- Plaintiff entered into a contract to purchase marine fuel from OWB Dubai-Korea and O.W. Bunker Middle East DMCC that was delivered to the Star of Nippon on October 30, 2014 by GS Caltex Corporation.  *See* Complaint at para. 25-26, Exhibit J, Exhibit K.

- Plaintiff entered into a contract to purchase marine fuel from O.W. Bunker Middle East DMCC – Brazil ME that was delivered to the Mimosa on October 15, 2014 by Petróleo Brasileiro S.A..  *See* Complaint at para. 30-31, Exhibit N, Exhibit O.

- Plaintiff entered into a contract to purchase marine fuel from OWB Dubai-Korea and O.W. Bunker Middle East DMCC that was delivered to the Lowlands Maine on October 30, 2014 by SK Trading International.  *See* Complaint at para. 35-36, Exhibit R, Exhibit S.

- Plaintiff entered into a contract to purchase marine fuel from O.W. Bunker Far East (S) Pte. Ltd. that was delivered to the Ken Cape on October 29, 2014 by Bunker House Petroleum PTE Ltd.  *See* Complaint at para. 40-41, Exhibit V, Exhibit W.

- Plaintiff entered into a contract to purchase marine fuel from O.W. Bunker Panama S.A. that was delivered to the Bridgegate on October 17, 2014 by O.W. Bunker Panama S.A. *See* Complaint at para. 45-46, Exhibit Z, Exhibit AA.


Conspicuously <u>absent</u> from the Complaint are any allegations that the Plaintiff  actually paid for, owned or delivered to the Vessels the bunkers for which the Plaintiff is now seeking payment.  Indeed, upon information and belief, the actual suppliers of the bunkers to the Vessels – Universal Energy PTE Ltd. (supplier to the Zagora at the port of Singapore), O.W. Bunker Panama S.A. (supplier to the Bridgegate at the Panama Canal), SK Trading International (supplier to the Torm Bornholm and to the Lowlands Maine at the port of Busan, Korea), GS Caltex Corporation (supplier to the Star of Nippon at the port of Busan, Korea), Petróleo Brasileiro S.A. (supplier to the Mimosa at the port of Santos, Brazil), and Bunker House Petroleum PTE Ltd. (supplier to the Ken Cape at the port of Singapore) – have not been paid for the bunkers that were supplied to the Vessels.  As a result, Hudson Shipping remains at risk of the assertion of maritime liens by the suppliers of the bunkers and the Hudson Shipping Vessels

remain at risk of possible arrest by the suppliers who have not been paid.  Ross Decl. at para. 4,
11-12.   As explained at pp. 10-12 below, Hudson Shipping also remains at risk of the assertion
of maritime liens by various foreign O.W. Bunker companies, and the Vessels therefore remain
at risk of possible arrest by those companies as well.

In fact, starting in or about September 2014, Hudson Shipping had become concerned
that it could be exposed to the risk of maritime lien claims from third party suppliers of bunkers
in situations in which Hudson Shipping's arrangements to purchase bunkers from the suppliers
had been made using any O.W. Bunker companies as intermediaries if Hudson Shipping paid the
O.W. Bunker companies before the suppliers had been paid.  Employees of Hudson Shipping,
including William Ross, an Energy Procurement Manager at Hudson Shipping, therefore
engaged in discussions and communications about that issue with employees of the O.W. Bunker
group of companies including René Broman (Regional Credit Manager North & South America,
O.W. Bunker North America, Inc.), Michael Bruno-Sorenson (Sales Manager, O.W. Bunker
USA, Inc.), and Mr. Rune Pejterson (Sourcing Manager, OWB Far East / Singapore).  As a result
of those discussions and communications, it was agreed that if Hudson Shipping used the
services of O.W. Bunker companies as intermediaries to purchase from third party suppliers
bunkers for Hudson Shipping vessels, payment for the bunkers was to be made to the O.W.
Bunker companies only if Hudson Shipping had received written confirmation from the third
party suppliers that they had been paid in full.  Ross Decl. at para. 4-6.

Under the procedure that had been agreed upon as described above, in October 2014
Hudson Shipping placed orders with O.W. Bunker USA Inc. as an intermediary for the purchase
of bunkers from third party suppliers for the Vessels as follows:

- Mimosa (for bunkers to be delivered to the vessel between October 13, 2014 and October 14, 2014 at the port of Santos, Brazil, by the supplier Petróleo Brasileiro S.A.);

- Zagora (for bunkers to be delivered to the vessel between October 15, 2015 and October 17, 2015 at the port of Singapore by the supplier Universal Energy PTE Ltd.);

- Bridgegate (for bunkers to be delivered to the vessel on or about October 14, 2014 at the port of the Panama Canal by the supplier O.W. Bunker Panama S.A.);

- Torm Bornholm (for bunkers to be delivered to the vessel on or about October 20, 2014 at the port of Busan, Korea, by the supplier SK Trading International);

- Lowlands Maine (for bunkers to be delivered to the vessel between October 29, 2014 and October 31, 2014 at the port of Busan, Korea, by the supplier SK Trading International);

- Star of Nippon (for bunkers to be delivered to the vessel between October 29, 2014 and October 31, 2014 at the port of Busan, Korea, by the supplier GS Caltex Corporation); and

- Ken Cape (for bunkers to be delivered to the vessel on or about October 29, 2015 at the port of Singapore by the supplier Bunker House Petroleum PTE Ltd.).

All of the orders for bunkers described above were made by Hudson Shipping on the express condition that Hudson Shipping would make payment to any intermediary O.W. Bunker company, including O.W. Bunker USA Inc., only if the actual third party suppliers of the bunkers provided written confirmation to Hudson Shipping that they had been paid in full for the bunkers they had supplied to the Hudson Shipping Vessels.  Ross Decl. at para. 9-10.

On November 13, 2014, the above-captioned bankruptcy cases were commenced with the filing of Chapter 11 bankruptcy petitions by OWB USA, O.W. Bunker Holding North America,

Inc., and O.W. Bunker North America Inc. ("OWB NA").  The three debtors' bankruptcy cases were jointly administered, and on December 15, 2015, the Bankruptcy Court entered an Order confirming the First Modified Liquidation Plans for OWB USA (the Plaintiff in this adversary proceeding) and OWB NA (the "Plans").

Even though the Plaintiff did not pay the actual suppliers (or anyone else) for the bunkers that were delivered to the Mimosa, Zagora, Bridgegate, Torm Bornholm, Lowlands Maine, Star of Nippon, and Ken Cape in October 2014 as described above, and even though the Plaintiff therefore did not ever provide to Hudson Shipping the bunker suppliers' written confirmations of payment and thus did not fulfill the express condition to payment to which the Plaintiff had agreed, on December 14, 2015 the Plaintiff[1] commenced this adversary proceeding against Hudson Shipping claiming that it should be paid for the amounts of the invoices (which total more than $1.8 million) that it sent to Hudson Shipping in disregard of the express condition to which it had agreed.  After Hudson Shipping  moved for dismissal of the Plaintiff's original Complaint in this adversary proceeding, on March 21, 2016 the Plaintiff filed its First Amended Complaint and has continued to assert claims against Hudson Shipping for turnover of property, breach of contract, unjust enrichment, and conversion.  However, for the reasons discussed below, this adversary proceeding should be dismissed.

---

[1] Under the confirmed Plans, the Liquidating Trustee of OWB USA is to be substituted for and replace OWB USA in any pending litigation, but that substitution has not yet occurred in this adversary proceeding.

## **LEGAL ARGUMENT**

### I.   **The Applicable Standards for Motions to Dismiss.**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) challenges the court's

power to adjudicate the case due to the failure to join a party under Fed. R. Civ. P. 19.  "The

determination of whether a party is necessary is based on the state of the pleadings at the time the

motion is brought" and "any Rule 19 decision is fact-specific and must be made on a case-by-

case basis."  M.C. By & Through Mrs. C. v. Voluntown Bd. of Educ., 178 F.R.D. 367, 369-71

(D. Conn. 1998).  "In reviewing a motion to dismiss pursuant to Rule 19, the Court determines

whether an absent party is 'necessary' under Rule 19(a) as a threshold requirement before

undertaking a Rule 19(b) analysis as to whether the party is also 'indispensible' such that

dismissal would be required in its absence."  Known Litigation Holdings, LLC v. Navigators Ins.

Co., 934 F. Supp. 2d 409, 415 (D. Conn. 2013).  "A party is necessary under Rule 19(a) and

must be joined if: (A) in that person's absence, the court cannot accord complete relief among

existing parties; or (B) that person claims an interest relating to the subject of the action and is so

situated that disposing of the action in the person's absence may: (i) as a practical matter impair

or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the

interest."  Edible Arrangements, LLC v. Provide Commerce, Inc., 2015 WL 1321441 at *3 (D.

Conn. 2015) (quoting Fed.R.Civ.P. 19(a)).

"[I]f the court concludes that the party is a necessary party [under Rule 19(a)], it must

then ask if it is feasible for the party to be joined."  Tweed-New Haven Airport Auth. v. Town of

East Haven, 2008 WL 4735043 at *3 (D. Conn. 2008).  "If the court determines joinder is not

feasible for a jurisdictional purpose or other reason, it undertakes the second step of the inquiry

and determines under Rule 19(b) whether the party is indispensable." Id.  "If the court

determines that the party is indispensable, and its joinder will defeat jurisdiction, the court must

dismiss the action." Id.  "If a party who meets the criteria described in Rule 19(a) cannot be

joined, the court must determine whether the claim should be dismissed because the necessary

party is 'indispensable.'" Quinn v. Fishkin, 2015 WL 4635770 at *9 (D. Conn. 2015).  Pursuant

to Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court

must determine whether, in equity and good conscience, the action should proceed among the

existing parties or should be dismissed.  Id.  (quoting Fed.R.Civ.P. 19(b)).  "The factors for the

court to consider include: (1) the extent to which a judgment rendered in the person's absence

might prejudice that person or the existing parties; (2) the extent to which any prejudice could be

lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C)

other measures; (3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for

nonjoinder." Id. (quoting Fed.R.Civ.P. 19(b)).  "A court may go outside the pleadings and look

to extrinsic evidence such as affidavits or documents in ruling on a Rule 12(b)(7)

motion." Quinones v. Citimortgage, Inc., 2015 WL 9590283, at *2 (Bankr. D. Puerto Rico

2015).

A different standard is applicable to a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6).  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." In re

Lyondell Chemical Company, 543 B.R. 417, 422 (Bankr. S.D.N.Y. 2016) (internal quotation

marks omitted).  A claim for relief is plausible on its face "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id.  "The facts pleaded must establish 'more than a sheer possibility that a

defendant has acted unlawfully.'"  In re Swift, 2016 WL 355515, at *3 (Bankr. E.D.N.Y. 2016)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937 (2009)).  "A recitation of the

elements of a cause of action, supported by mere conclusory statements is not sufficient."  In re

Varela, 530 B.R. 573, 580 (Bankr. E.D.N.Y. 2015).  "Ultimately, the court must determine

whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an

entitlement to relief."  In re AMR Corporation, 536 B.R. 360, 365 (Bankr. S.D.N.Y. 2015)

(internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief

above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct.

1955 (2007).  "Although detailed factual allegations are not necessary, a formulaic recitation of

the elements of a cause of action will not do" and "[a] court should dismiss a complaint that

merely contains naked assertion[s] devoid of further factual enhancement."  In re DeCrosta, 2012

WL 300791, at *3 (Bankr. D. Conn. 2012) (internal quotation marks omitted).

"Determining whether a complaint states a plausible claim for relief . . . is a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense."  Iqbal, 556 U.S. at 663-64.  It should be noted that "plausibility depends on a host of

considerations: the full factual picture presented by the complaint, the particular cause of action

and its elements, and the existence of alternative explanations so obvious that they render

plaintiff's inferences unreasonable."  In re Collins, 540 B.R. 54, 59 (Bankr. E.D.N.Y. 2015)

(internal quotation marks omitted).  In deciding a motion to dismiss under Rule 12(b)(6), "the

court must limit its analysis to the four corners of the complaint" but "may consider documents

attached to the complaint as an exhibit or incorporated in the complaint by reference."

Kermanshah v. Kermanshah, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008) (internal quotations

marks omitted).

**II.    The Plaintiff's Complaint Must Be Dismissed Because The Plaintiff
         Has Failed To Join Indispensable Parties.**

According to the Complaint in this case, the Plaintiff "sold and supplied marine fuel to

customers" as "part of a family of global marine fuel logistics companies ultimately owned by

OW Bunker A/S."  Complaint at ¶¶ 3, 13.   The Complaint alleges that Hudson Shipping ordered

marine fuel from the Plaintiff to be delivered to the Vessels (*see* Complaint at ¶¶ 14, 19, 24, 29,

34, 39 and 44); that the Plaintiff entered into contracts to purchase marine fuel from various

foreign O.W. Bunker companies (*see* Complaint at ¶¶ 15, 20, 25, 30, 35, 40 and 45); and that

marine fuel was delivered to the Vessels (*see* Complaint at ¶¶ 16, 21, 26, 31, 36, 41 and 46).

Notably _absent_ from the allegations in the Complaint are any allegations that the Plaintiff

actually _paid for_, _owned_ or _delivered_ to Hudson Shipping's Vessels the marine fuel it alleges it

sold to Hudson Shipping.  In fact, that did not occur.  Instead, as described above, in connection

with the transactions that are at issue in this case the Plaintiff merely acted as an intermediary –

in effect a broker – in the sale and delivery of bunkers to Hudson Shipping's Vessels from third

party suppliers (the "Bunker Suppliers") in October 2014. [2]   Ross Decl. at para. 6-9.

Moreover, according to the allegations in the Complaint, the Plaintiff was not the only

O.W. Bunker company that purportedly acted as an intermediary in connection with the bunkers

---

[2] Upon information and belief, the Bunker Suppliers that supplied the bunkers at issue in this
adversary proceeding are Petróleo Brasileiro S.A (apparently a Brazilian company), Universal
Energy PTE Ltd. (apparently a Singapore company), SK Trading International (apparently a
Korean company), GS Caltex Corporation (apparently a Korean company), Bunker House
Petroleum PTE Ltd. (apparently a Singapore company), and O.W. Bunker Panama S.A
(apparently a Panamanian company).  *See* Complaint at ¶¶ 16, 21, 26, 31, 36, 41 and 46, Exhibits
C, G, K, O, S, W and AA.

at issue in this adversary proceeding which were delivered to the Vessels.  Plaintiff alleges that it

entered into contracts to purchase marine fuel from the following companies in the O.W. Bunker

"family" of companies:    O.W. Bunker Far East (S) Pte. Ltd., OWB Dubai-Korea, O.W. Bunker

Middle East DMCC, O.W. Bunker Middle East DMCC – Brazil ME, and O.W. Bunker Panama

S.A. (collectively, the "Foreign OWB Companies").  *See* Complaint at ¶¶ 15, 20, 25, 30, 35, 40

and 45.   Although Hudson Shipping denies that the OW Bunker Group Terms and Conditions of

sale for Marine Bunkers (Edition 2013) that is attached as Exhibit CC to the Complaint (the

"OWB General Terms") were part of any contracts between Hudson Shipping and the Plaintiff,

the language of the OWB General Terms would make them applicable to the sales of bunkers by

the Foreign OWB Companies to the Plaintiff that are alleged to have occurred because the OWB

General Terms state that they apply to the International O.W. Bunker Group (the "OWB Group"

- apparently including the Plaintiff and the Foreign OWB Companies); that they apply to any

orders or agreements in which a member of the OWB Group acts as seller or buyer (such as the

agreements between the Foreign OWB Companies and the Plaintiff alleged in the Complaint at

¶¶ 15, 20, 25, 30, 35, 40 and 45); and that they apply to any party ordering bunkers from OWB

Group sellers, such as the orders allegedly placed by the Plaintiff with the Foreign OWB

Companies (as alleged in the Complaint at ¶¶ 15, 20, 25, 30, 35, 40 and 45).  *See* OWB Terms,

Sections A.1, A.2 and B.1.

According to the OWB Terms, the seller has a lien on the vessel for any bunkers

supplied; title in and to bunkers delivered and/or property rights in and to bunkers delivered

remains vested in the seller until full payment is received; the provisions of the OWB Terms do

not prejudice or limit in any way the seller's right to arrest/attach vessels wherever situated in the

world, without prior notice; and where bunkers are supplied to a vessel, their acceptance on a

vessel creates a maritime lien over the vessel for the price of the bunkers.  *See* OWB Terms,

Sections C.6, H.1, H.5 and I.9.

In addition, in the United States, the Maritime Commercial Instruments and Liens Act

("Liens Act"), 46 U.S.C. § 31341 *et seq.*, provides that "a person providing necessaries to a

vessel on the order of the owner or a person authorized by the owner—(1) has a maritime lien on

the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege

or prove in the action that credit was given to the vessel."  Barwil ASCA v. M/V SAVA, 44 F.

Supp. 2d 484, 487 (E.D.N.Y. 1999) (quoting 46 U.S.C. § 31342(a)).  Maritime law in other

jurisdictions around the world similarly provides that persons or entities that provide supplies

(such as bunkers) to a vessel can seek to enforce lien rights, including arrest (detention) of a

vessel if the supplier is not paid for the supplies that have been provided to a vessel.  Ross. Decl.

at para. 4.

In this case, since the Bunker Suppliers have not been paid for the bunkers that they

supplied to Hudson Shipping's vessels in the transactions at issue, and since the Foreign OWB

Companies have not been paid for the bunkers they allegedly obtained from the Bunker

Suppliers and allegedly sold to the Plaintiff, Hudson Shipping and its Vessels remain exposed to

possible maritime lien claims by both the Bunker Suppliers and the Foreign OWB Companies.

Therefore, under Rule 19(a), the Bunker Suppliers and the Foreign OWB Companies are all

necessary parties in this action.  The Bunker Suppliers and the Foreign OWB Companies are

necessary parties pursuant to Rule 19(a)(1)(A) because in their "absence, the court cannot accord

complete relief among existing parties."  *See* In re Rouge Industries, Inc., 326 B.R. 55, 59

(Bankr. D. Del. 2005) (stating that "[a] determination of ownership to assets allegedly transferred

between a buyer and a seller should not be attempted without both parties to the transaction

being before the court" and finding necessary party status where the party claimed ownership of
the debtor's accounts receivable); In re Bridge Information Systems, Inc., 288 B.R. 548, 555
(Bankr. E.D. Mo. 2001) (holding that the absent lienholders were necessary parties to the
pending adversary proceedings since the adversary proceedings had the ability to affect the
absent parties' interest in the debtor's real estate); Sever v. Glickman, 298 F. Supp. 2d 267, 275
(D. Conn. 2004) ("[i]t is well established that a party to a contract which is the subject of the
litigation is considered a 'necessary' party").  The Court cannot accord complete relief to the
existing parties because, if a judgment were to be entered in this case requiring Hudson Shipping
to pay to the Plaintiff the amounts at issue, Hudson Shipping's payment of those amounts may
not affect the rights of the Bunker Suppliers or the rights of the Foreign OWB Companies and
would still leave Hudson Shipping and its vessels exposed to maritime lien claims by the Bunker
Suppliers and the Foreign OWB Companies.

　　　Likewise, the Bunker Suppliers and the Foreign OWB Companies are necessary parties
under Rule 19(a)(1)(B)(ii) because each of the Bunker Suppliers and each of the Foreign OWB
Companies claims an interest relating to the subject of this action – which concerns who has the
right to payment for the bunkers that were delivered to Hudson Shipping's Vessels – and the
Bunker Suppliers and the Foreign OWB Companies are so situated that disposing of the action in
their absence may leave an existing party, in this case defendant Hudson Shipping, subject to a
substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the
interests claimed by the Bunker Suppliers and the Foreign OWB Companies.  Here again, no
judgment or payment in favor of the Plaintiff in this action can protect defendant Hudson
Shipping because the Bunker Suppliers and the Foreign OWB Companies would still be able to
seek recovery of the same amounts from Hudson Shipping by asserting their maritime lien rights

and seeking to arrest Hudson Shipping's Vessels in ports around the world unless they too are paid.

Since the Bunker Suppliers and the Foreign OWB Companies are clearly necessary parties under Rule 19(a) who are required to be joined in this adversary proceeding if feasible, the Plaintiff must either join the Bunker Suppliers and the Foreign OWB Companies as parties, or if it appears that the Bunker Suppliers and the Foreign OWB Companies cannot be so joined, the Court must dismiss this adversary proceeding because the Bunker Suppliers and the Foreign OWB Companies are indispensable parties under Rule 19(b).

Rule 19(b) provides that "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Rule 19(b) further provides that "[t]he factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by:  (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  Application of these Rule 19(b) factors demonstrates that this adversary proceeding should be dismissed if the Bunker Suppliers and the Foreign OWB Companies cannot be joined as parties by the Plaintiff.

First, any judgment rendered in the absence of the Bunker Suppliers and the Foreign OWB Companies which finds that the Plaintiff is entitled to payment for the bunkers at issue rather than the Bunker Suppliers or the Foreign OWB Companies might prejudice them, if such a judgment were somehow later found to be binding on them, because it would have been rendered

without an opportunity for them to contest it.  Certainly, any judgment in this action rendered in the absence of the Bunker Suppliers and the Foreign OWB Companies which therefore is not binding on them, as appears likely, would prejudice defendant Hudson Shipping because Hudson Shipping would remain potentially liable for double payment and the expense of litigation in ports around the world if the Bunker Suppliers or the Foreign OWB Companies try to assert maritime lien claims and seek to arrest Hudson Shipping's Vessels because payment for the bunkers has not been made to them.

Second, it does not appear that the prejudice to defendant Hudson Shipping could be lessened or avoided by any protective provisions in the judgment or by other measures available to this Court, since this Court's jurisdiction does not extend worldwide and could not effectively protect Hudson Shipping elsewhere.

Third, for the reasons discussed above, a judgment rendered in the absence of the Bunker Suppliers and the Foreign OWB Companies would not be adequate because it cannot fully and finally resolve all issues about who is entitled to payment for the bunkers that were supplied to Hudson Shipping's Vessels.

Finally, it appears that the Plaintiff would have adequate alternative remedies if this adversary proceeding is dismissed.  For example, the Plaintiff could seek to obtain binding and enforceable waivers or adjudications of the rights of the Bunker Supplies and the Foreign OWB Companies with respect to the bunkers at issue that are sufficient to protect Hudson Shipping from exposure to liability for double payment – in effect satisfying the condition to payment by Hudson Shipping to which Plaintiff agreed – and then request payment from Hudson Shipping.

Accordingly, the Bunker Suppliers and the Foreign OWB Companies are indispensable parties under Rule 19(b) and this adversary proceeding must be dismissed if their joinder is not feasible for jurisdictional or other reasons.

### III.    Count II Of The Complaint Must Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted.

Count II of the Complaint should be dismissed because it fails to state a viable and plausible claim for breach of contract.  Specifically, the Plaintiff has failed to allege the existence of an enforceable contract between the Plaintiff and the Defendant.

Contracts for the sale of goods for a price of five hundred dollars or more are not enforceable unless there is some writing sufficient to indicate that a contract for sale has been made between the parties which has been signed by the party against whom enforcement is sought or by that party's authorized agent or broker.  *See, e.g.,* Conn. Gen. Stat. § 42a-2-201; 810 Illinois Compiled Statutes 5/2-201; Texas Business and Commerce Code § 2.201.  In the Complaint, although the Plaintiff has now alleged generally that sales order confirmations it sent to Hudson Shipping together with the OWB General Terms which were allegedly incorporated therein "formed the contracts of sale between [Plaintiff] and Hudson [Shipping],"  Complaint at ¶ 49, there are no allegations anywhere the Complaint that the alleged contracts were signed by Hudson Shipping or any authorized agent of Hudson Shipping.   As a result, Count II of the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### IV.    Count III Of The Complaint Must Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted.

In Count III of the Complaint, the Plaintiff purports to allege a claim against Hudson Shipping for unjust enrichment.  However, the allegations of Count III do not contain sufficient factual allegations which, if accepted as true, would state a claim for unjust enrichment that is

plausible on its face.  Instead, Count III contains nothing more than a formulaic recitation of the elements of a claim for unjust enrichment, alleging only that Hudson Shipping is "receiving an undue and unjust windfall" and that Hudson Shipping "is not entitled to use the marine fuel for its profit, and to the detriment of Plaintiff."  Complaint at ¶ 69.  Such conclusory allegations are insufficient.

Recovery for unjust enrichment is essentially equitable, and is based on the principle that in a given situation it is contrary to equity and good conscience for a party to retain a benefit which has come to the party at the underline expense of another party.  *See, e.g.,*  underline Bolmer v. Kocet, 6 Conn. App. 595, 613, 507 A.2d 129 (1986).  *See also* underline Gagnon v. Schickel, 983 N.E. 2d 1044, 1052 (Ill. App. 2012) ("To state a claim for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the defendant's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." (internal quotations and citations omitted)); underline HECI Exploration Co. v. Neel, 982 S.W.2d 881, 891(Tex. 1998) (recognizing that in some circumstances a party has a cause of action based on unjust enrichment when another party has profited at the aggrieved party's expense).  In the present case, however, there are no allegations anywhere in the Complaint that the benefits allegedly provided to Hudson Shipping – presumably the bunkers – were provided to Hudson Shipping underline at the expense of the Plaintiff.  Indeed, the Plaintiff has carefully avoided pleading that it ever owned or paid for the bunkers at issue, because that simply is not true.  The unjust enrichment claim in Count III of the Complaint is also deficient because it improperly incorporates all of the allegations of Plaintiff's claims for breach of contract rather than allegations of the separate facts that are necessary to support a claim for unjust enrichment.  *See, e.g.,* underline Gagnon, 983 N.E. 2d at 1052 (affirming dismissal of the plaintiff's unjust enrichment claim because the claim

improperly incorporated allegations of an express contract).  As a result, Count III fails to state any plausible unjust enrichment claim upon which relief might be granted, and therefore Count III of the Complaint should be dismissed.

## V.   Count IV Of The Complaint Must Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted.

Similarly, Count IV of the Complaint fails to state any viable and plausible claim for conversion and therefore must be dismissed.  Specifically, the Plaintiff has failed to allege the essential elements of a conversion claim because it has failed to allege that the Plaintiff owned or indefinitely had the right to possess the property (bunkers) allegedly converted.  In addition, the Plaintiff's Complaint fails to allege that Hudson Shipping lacked authorization to take possession and ownership of the property at issue to the exclusion of the Plaintiff's rights, or that the Plaintiff has demanded a return of the property at issue.

"The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745, 770, 905 A.2d 623 (2006) (citation omitted; internal quotation marks omitted).  *See also, e.g.,* Naiditch v. Shaf Home Builders, Inc., 160 Ill. App. 3d 245, 269, 512 N.E.2d 1027 (1987) ("The elements of conversion are (1) unauthorized and wrongful assumption of control or ownership by one person over the personalty of another; (2) the other person's right in the property; (3) the right to immediate possession of the property; and (4) a demand for possession." ); A.T. Kearney, Inc. v. INCA Int'l, Inc., 132 Ill. App. 3d 655, 664, 477 N.E.2d 1326 (1985) ("The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof."); Khorshid, Inc. v. Christian, 257 S.W.3d 748, 758-59 (Tex. App. 2008) ("Conversion is the unauthorized and

18

wrongful assumption and exercise of dominion and control over the personal property of another

to the exclusion of, or inconsistent with, the owner's rights."). "Thus, [c]onversion is some

unauthorized act which deprives another of his property permanently or for an indefinite time;

some unauthorized assumption and exercise of the powers of the owner to his harm." Deming,

279 Conn. at 770. "Conversions may be grouped into two general classes: (1) those where the

possession is originally wrongful; and (2) those where it is rightful and subsequently becomes

wrongful." Label Sys. Corp. v. Aghamohammadi, 270 Conn. 291, 332 n.30, 852 A.2d 703

(2004). "Under the first class, wrongful use and the unauthorized dominion constitute the

conversion; therefore no demand for the return of the personal property is required." Id. "Under

the second class, since the possession is rightful and there is no act of conversion, there can be no

conversion until the possessor refuses to deliver up the property upon demand." Id. As part of a

conversion claim, "[a] plaintiff must establish legal ownership or right to possession in the

particular thing . . . that the defendant is alleged to have converted." Macomber v. Travelers

Property and Cas. Corp., 261 Conn. 620, 650, 804 A.2d 180 (2002) (quoting Columbia Marine

Services, Inc. v. Reffett Ltd., 861 F.2d 18, 23 (2d Cir. 1988)).

The Complaint in this case does not allege any of the required elements of a viable and

plausible claim for conversion. Indeed, the Plaintiff does not allege (because it cannot) that it

was ever the owner of the bunkers at issue in this adversary proceeding, and the Plaintiff does

not allege any of the other necessary elements of a conversion claim. Instead, the Plaintiff

merely makes a conclusory allegation that "Defendant's actions in accepting, consuming and

destroying the marine fuel for its own use and profit without payment of the Balance Amount

constitutes conversion." Complaint at ¶ 72. That conclusory allegation is wholly insufficient to

state any plausible conversion claim upon which relief might be granted, and therefore Count IV

of the Complaint should be dismissed.[3]

## **CONCLUSION**

For the foregoing reasons, this Court should grant defendant Hudson Shipping's motion

to dismiss the Plaintiff's Complaint in its entirety for failure to join indispensable parties.

Furthermore, if the entire Complaint is not dismissed, the Court should dismiss Count II (breach

of contract), Count III (unjust enrichment), and Count IV (conversion) of the Complaint for

failure to state claims upon which relief can be granted.


THE DEFENDANT,
HUDSON SHIPPING LINES INC.

By: /s/  David B. Zabel
     David B. Zabel, Esq. (ct01382)
     Matthew A. Ciarleglio, Esq. (ct29576)
     COHEN AND WOLF, P.C.
     1115 Broad Street
     Bridgeport, CT 06604
     Telephone: 203-368-0211
     Facsimile: 203-394-9901
     Email: dzabel@cohenandwolf.com
     Email: mciarleglio@cohenandwolf.com

---

[3] The conversion claim in Count IV of the Complaint appears to be limited to a claim that
Hudson Shipping converted marine fuel, but to the extent that Plaintiff's conversion claim is
based on Defendant's allegedly wrongful possession of the Balance Amount, such a claim would
be improper.  "[A]n action for conversion of funds may not be maintained to satisfy a mere
obligation to pay money." Deming, 279 Conn. at 772 (citations omitted; internal quotation
marks omitted).  "It must be shown that the money claimed, or its equivalent, at all times
belonged to the plaintiff and that the defendant converted it to his own use." Id. "Consistent
with this rule, in our case law sustaining a cause of action wherein money was the subject of the
conversion or theft, the plaintiffs in those cases at one time had possession of, or legal title to, the
money." Id. As the Plaintiff has not alleged that it had possession of or legal title to the Balance
Amount, any claim for conversion of the Balance Amount is insufficient.

## CERTIFICATION OF SERVICE

I hereby certify that on April 15, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/  Matthew A. Ciarleglio